UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HENRI KELI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1697 (RBW) |
| | ) | ECF |
| CONDOLEEZZA RICE, | ) | |
| Secretary of State, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS

Defendants Condoleezza Rice, Maura Harty and Stephen A. Edson, in their official capacities as the Secretary of State, Assistant Secretary for Counselor Affairs, and Deputy Assistant Secretary for Visa Services, respectively ("Defendants"), through and by undersigned counsel, respectfully move to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative because Plaintiff's claim is now moot. In support of this motion, Defendants respectfully refer the Court to the accompanying memorandum of points and authorities. A proposed Order consistent with this motion is attached hereto.

Respectfully submitted,

/s/
_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

/s/
_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/
_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, D.C.  20530
202-305-4851

*Of Counsel:*
Gordon J. Dickey
Attorney - Advisor
Office of the Legal Adviser
United States Department of State
Washington, D.C.  20520

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HENRI KELI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1697 (RBW) |
| | ) | ECF |
| CONDOLEEZZA RICE, | ) | |
| Secretary of State, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

This matter involves a claim for mandamus and declaratory relief.[1]  Plaintiff alleges that he is entitled, as a matter of law, to an immigrant visa under the diversity visa program. However, as explained below, the Court lacks subject matter jurisdiction over his claim because a consular's decision to grant or deny visas is not subject to juridical review.  Additionally, as of September 30, 2007, all unused visa numbers for the 2007 diversity visa program expired and Defendants had no notice of Plaintiff's instant Complaint until October 2, 2007.  The period of eligibility has thus lapsed, rendering his complaint moot.  Accordingly Plaintiff's Complaint should be dismissed with prejudice.

---

[1]  Plaintiff also claims, albeit in passing only, that Defendants violated the Administrative Procedure Act ("APA") when they failed to issue a visa.  Comp. ¶ 15.  There is no need to consider the APA argument because the court lacks subject matter jurisdiction.  *Romero v. Consulate of U.S., Barranquilla*, 860 F.Supp. 319, 324 (E.D. Va. 1994), *citing Haitian Refugee Center v. Baker*, 953 F.2d 1498, 1507 (11th Cir.), *cert. denied*, 502 U.S. 1122 (1992).

## II. <u>FACTUAL BACKGROUND</u>

Plaintiff Henri Keli, formerly known as Hassani Youssouf, is a national of the French and Southern Antarctic Territories resident in the Netherlands. Comp. ¶ 2 and Exh. 1, attached thereto (*see* recipient's name and address on documents). Mr. Keli entered the diversity visa lottery program for fiscal year 2007, and was informed that he was selected as a potential recipient of an immigrant diversity lottery visa. Comp. ¶ 9.

Mr. Keli applied with his wife, Xiaohui Han, at the American consular post in London and they were interviewed on January 10, 2007. Comp. ¶ 14(b) and Exh.1, attached thereto (*see* Sect. 14 of Visa Application, form DS-23C). The consular officer developed certain concerns about the couple's initial interview and Mr. Keli was interviewed individually in August 2007. Compl. ¶ 9. Thereafter, Mr. Keli's case was moved forward for final processing pending security clearance. Compl. ¶ 9 and Exh. 2, attached thereto, (*see* E-mail traffic between Plaintiff and London Consular). Although the required security clearance was requested, processing could not be completed before the end of the fiscal year on September 30, 2007. *See* Comp. generally.

Plaintiff then filed his complaint, on September 20, 2007, which was served properly, pursuant to Fed. R. Civ. P. 4(i), on October 2, 2007. *See* USDC Pacer Docs. No. 1 and 2. He requested that the Court grant him the following relief, *inter alia*:

- Require[] Defendants to properly adjudicate plaintiff's application for action on an approved application.
- Require[] Defendants to adjudicate Plaintiff's application before 30th September 2007.

Comp. ¶ 17, prayer for relief.

The diversity visa lottery program is explicitly administered on the basis that more names

are selected in the lottery than can receive visas.[2]  INA section 201(e), 8 U.S.C. § 1151(e), allows for 55,000 diversity visa immigrants per fiscal year.  In recognition that some of the first 50,000 aliens registered do not pursue diversity visas, or may not be otherwise eligible, the Department of State each year notifies approximately twice as many potential applicants of diversity visa eligibility than there are available numbers, to insure that as many applicants as possible can benefit from this program.  Thus, the number of lottery "winners" far exceeds the number that can actually receive a visa.  The letter accordingly makes clear to applicants that the notification does not guarantee the applicant will be able to qualify for status in time and that selection does *not* guarantee that he or she will receive a visa because the number of applicants selected is greater than the number of visas available.  *See* Exh. A, attached hereto.

## IV.  ARGUMENT

### A.  **Standard of Review - Lack of Subject Matter Jurisdiction**

When reviewing a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Where a motion to dismiss, however, presents a dispute over the factual basis for the

---

[2]  The administration of the diversity visa lottery program, conducted pursuant to INA section 203(c), 8 U.S.C. § 1153(c), is built upon the requirement that  processing must be completed within the appropriate fiscal year.  After the Attorney General has made the determinations relative to previous preference numerical limitations, high and low-admission regions and states, and other numerical criteria for diversity visas, pursuant to INA §203(c)(1), 8 U.S.C. § 1153(c)(1), an announcement is made of low admission states whose natives may compete for diversity visas to be issued during the next fiscal year.  The Department of State's Visa Office specifies the time and place for submitting petitions that conform to 22 C.F.R. 42.33(b)(1), 9 FAM 42.33 Note 5.1, 9 FAM 42.33 Procedural Note 2.1, the Fiscal Year Program Notice in the Federal Register, and the Instructions for the Fiscal Year Program.

Court's jurisdiction, the Court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Rep. of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). "The plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence." *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998).

**B.  A Consular Officer's Decision is Not Reviewable.**

It has long been acknowledged that the decision of a consular officer to grant or deny a visa is not subject to court review. *See, e.g., Centeno v. Schultz*, 817 F.2d 1212 (5th Cir. 1987), *cert. denied*, 484 U.S. 1005 (1988); *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970 (9th Cir. 1986); *Ventura-Escamilla v. INS*, 647 F.2d 28 (9th Cir. 1981); *Rivera de Gomez v. Kissinger*, 534 F.2d 518 (2d Cir.), *cert. denied*, 429 U.S. 987 (1976); *U.S. ex rel. Ulrich v. Kellogg*, 30 F.2d 984 (D.C. Cir.), *cert. denied*, 279 U.S. 630 (1929); *Romero v. Consulate of the U.S., Barranquilla*, 860 F. Supp. 319 (E.D. Va. 1994); *Garcia v. Baker*, 765 F. Supp. 426 (N.D. Ill. 1990); *Hermina Sague v. United States*, 416 F. Supp. 217 (D.P.R. 1976). This well-settled doctrine is supported by Supreme Court precedent, the legislative history of the Immigration and Nationality Act ("INA"), and the terms of the statute itself.

"The Supreme Court has repeatedly affirmed that the legislative power of Congress over the admission of aliens is virtually complete." *Ventura-Escamilla*, 647 F.2d at 30 (*citing Fiallo v. Bell*, 430 U.S. 787, 792 (1977), *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972)) . As Justice Harlan stated in *Lem Moon Sing v. U.S.*, 158 U.S. 538 (1895):

> The power of Congress to exclude aliens altogether from the United
> States, or to prescribe the terms and conditions upon which they may

4

> come into this country, and to have its declared policy in that regard
> enforced exclusively through executive officers, without judicial
> intervention, is settled by our previous adjudication.

158 U.S. at 547 (emphasis added).

The Ninth Circuit in *Ventura-Escamilla* stated that Justice Harlan's statement "still clearly expresses the Court's position." 647 F.2d at 30. In holding that courts have no jurisdiction to review consular visa denials, the court in *Ventura-Escamilla* pointed out that:

> The scope of judicial review is necessarily limited by the recognition that
> the power to exclude or expel aliens, as a matter affecting international
> relations and national security, is vested in the Executive and Legislative
> branches of government. *Fong Yue Ting v. U.S.*, 149 U.S. 698, 713
> (1893). . . . As such, judicial intervention has been restricted to those
> matters the review of which has been 'authorized by treaty or statute, or is
> required by the paramount law of the Constitution.' *Hampton v. Mow Sun
> Wong*, 426 U.S. 88, 101 n.21 (1976).

647 F.2d at 30.

There is no statutory or other authority that permits judicial review of a consular officer's decision to deny a visa. Rather, the INA confers upon consular officers the authority to issue or deny a visa and specifically exempts the exercise of this power from review by the Secretary of State. As the court pointed out in *Ventura-Escamilla*, the legislative history establishes that before the enactment of the INA, Congress considered and rejected the suggestion that the consular officer's decision be administratively or judicially reviewable:

> Consular decisions--Although many suggestions were made to the
> committee with a view toward creating in the Department of State a
> semijudicial board, similar to the Board of Immigration Appeals, with
> jurisdiction to review consular decisions pertaining to the granting or
> refusals of visas, the committee does not feel that such body should be
> created by legislative enactment, nor that the power, duties and functions
> conferred upon consular officers by the instant bill should be made subject
> to review by the Secretary of State . . . .

5

647 F.2d at 30-31 (quoting H. Rep. No. 1365, 82nd Congress, 2d Sess., 1952 U.S. Code Cong. &
Admin. News 1653, 1688).

Cases decided under the doctrine of consular nonreviewability make clear that courts
have no jurisdiction to consider requests for review of consular visa decisions, and that
plaintiffs' requests for such relief are deficient as a matter of law.  *See, e.g., Ventura-Escamilla*,
647 F.2d at 30 (the court had no jurisdiction to review consul's decision to deny immigrant visa
application); *Rivera*, 534 F.2d at 519 (same); *Garcia*, 765 F. Supp. at 427 (the court had no
jurisdiction to review refusal of immigrant visa based on INA 212(a) exclusion finding);
*Hermina*, 416 F. Supp. at 219 (same); *Perales v. Casillas*, 903 F.2d 1043, 1046 (5th Cir. 1990)
(stating in dicta that immigrant visa applicants must establish that they will not likely become
public charges and that "[t]he consular decision on the visa application is totally immune from
review").  As the court noted in *Romero v. Consulate of U.S., Barranquilla*, 860 F. Supp. 319,
322 (E.D. Va. 1994), "the doctrine of consular nonreviewability is essentially without
exception."

The D.C. Circuit has also extensively defended the doctrine of nonreviewability of
consular determinations regarding visa eligibility.

> In prescribing the conditions for allowing aliens to enter the country,
> Congress acted in accordance with the ancient principle of international
> law that a nation state has the inherent right to exclude or admit foreigners
> and to prescribe applicable terms and conditions.  This firmly-established
> principle, dating from Roman times, received recognition during the
> Constitutional Convention and has continued to be an important postulate
> in the foreign relations of this country and other members of the
> international community.  For more than a century, the Supreme Court has
> thus recognized the power to exclude aliens as "'inherent in sovereignty,
> necessary for maintaining normal international relations and defending the
> country against foreign encroachments and dangers--a power to be
> exercised exclusively by the political branches of government'" and not

6

> "granted away or restrained on behalf of anyone.' *The Chinese Exclusion Case*, 130 U.S. 581, 609, 9 S.Ct. 623, 32 L.Ed. 1068 (1889).
>
> These considerations underlie the Court's long-standing recognition that 'any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.' *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952); *see also Reno v. American-Arab Comm.*, 119 S. Ct. 936, 947 (1999). Though it may be 'error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance," *Baker v. Carr*, 369 U.S. 186, 211 (1962), it is nevertheless 'not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.' *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950).

*Bruno v. Albright*, 197 F. 3rd 1153, 1158-1159 (D.C. Cir. 1999). Thus, a consular officer's visa determination is not subject to review, even in the circumstances where:

- the officer allegedly failed to follow Department regulations (*Burrafato v. Dept. of State*, 523 F.2d 554 (2d Cir. 1975), cert. denied, 424 U.S. 910 (1976));

- the applicant challenges the validity of the regulations on which the decision was based (*Ventura-Escamilla v. INS*, 647 F.2d 28 (9th Cir. 1981));

- the decision was alleged to have been based on a factual or legal error or was contrary to the INA (*Centeno v. Shultz*, 817 F.2d 1212, 1213 (5th Cir. 1987); *Loza-Bedoya v. INS*, 410 F.2d 343 (9th Cir. 1969); *Grullon v. Kissinger*, 417 F. Supp. 337 (E.D.N.Y. 1976), *aff'd* without op., 559 F.2d 1203 (2d Cir. 1977));

- the applicant claims the decision is reviewable under the APA (*Romero v. Consulate of U.S., Barranquilla*, 860 F.Supp. 319, 324 (E.D. Va. 1994), *citing Haitian Refugee Center v. Baker*, 953 F.2d 1498, 1507 (11th Cir.), *cert. denied*, 502 U.S. 1122 (1992); or

7

- the applicant challenges the reasonableness of the determination (*U.S. ex rel. London v. Phelps*, 22 F.2d 288, 290 (2d Cir 1927), *cert. denied*, 276 U.S. 630 (1928); *Hermina Sague v. United States*, 416 F. Supp. 217, 220-21 (D.P.R. 1976)).

In this case, the consular officer properly adjudicated Mr. Keli's application and submitted the required request for a security advisory opinion. In other words, although the required security clearance was requested, processing could not be completed before the end of the fiscal year on September 30, 2007. *See* Comp. generally. Nevertheless, the Court does not have jurisdiction to consider the actions of the consular officer in this matter, whether the alleged delay is attributable to the visa applicant, the government or a situation beyond the parties' control. Accordingly, the Complaint should be dismissed with prejudice.

**C.      This Matter is Moot Because There is No Remedy After the Close of the Fiscal Year.**

The Court is not only without jurisdiction to order issuance of a visa, but any possibility of visa issuance was moot at the close of the 2007 Fiscal Year, after which time no further visas could be issued under the 2007 diversity visa program consistent with statutory authority, pursuant to 8 U.S.C. §1154(a)(1)(I)(ii)(II).

Pursuant to Article III, Section 2 of the Constitution, federal courts are limited to adjudicating only "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). This requirement applies to each form of relief sought by the interested party and must persist throughout the duration of all proceedings. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167 (2000). If events outlive the controversy, such that the court may no longer be able to grant meaningful relief, the case must be dismissed as moot. *McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the United States*,

8

264 F. 3d 52, 55 (D.C. Cir. 2001); *see also Fraternal Order of Police v. Rubin*, 134 F. Supp.2d

39, 41 (D.D.C. 2001).

Here, there is no actual on-going controversy. Plaintiff filed his Complaint with the

Court on September 20, 2007, seeking an order for his diversity lottery visa to be issued for the

2007 program. Comp. ¶ 17.[3] Because the fiscal year of the program has now ended there is no

longer a legal basis for visa issuance. 8 U.S.C. §1154 (a)(1)(I)(ii)(II). The statutory authority

for the diversity visa lottery program requires that all visas be processed within the fiscal year of

the program. There is no legal authority to issue a visa after the end of that fiscal year, which

ended September 30, 2007. *See* USDC Pacer Doc. No. 2. At that time his petition for redress

was already moot. Thus, Plaintiff's claim is moot since the relief sought is unavailable as

Congress has provided, in INA §204(a)(1)(I)(ii)(II), 8 U.S.C. §1154 (a)(1)(I)(ii)(II), that

eligibility for a diversity visa lasts only through the end of the specific fiscal year for which an

alien was selected.

*Iddir v. INS*, 166 F.Supp.2d 1250, 1258-59 (N.D. Ill. 2001) aff'd on other grounds by 301

F.3d 492 (7th Cir. 2003), involved a mandamus petition by aliens selected for diversity program

visas, and centered on timeliness issues. The *Iddir* court ruled that because the fiscal year had

ended plaintiffs were no longer eligible to receive visas. *Iddir*, 166 F. Supp.2d at 1259. That

rendered the case moot, because visa numbers did not exist and could not be provided to

---

[3] He did not indicate that he sought expedited resolution. *See* Comp. Cover Sheet and Court's
Description: "Pro Se General Civil". There is no legal basis for an argument that filing suit
before September 30, 2007, preserves Plaintiff's eligibility after that date.

plaintiffs. *Id.*[4] *See also, Zapata v. INS*, 93 F. Supp.2d 355, 358 (S.D.N.Y. 2000) ("The plain meaning of §1154 is that after the fiscal year has ended on September 30, no diversity visas may be issued *nunc pro tunc* based on the results of the previous fiscal year's visa lottery."); *El Hindi v. Mc Elroy*, 2000 WL 1053873 (S.D.N.Y. July 31, 2000); *Sadowski v. INS*, 107 F.2d 451, 454 (S.D.N.Y. 2000) ("Where a relevant deadline for adjustment of status has passed, a request for relief is plainly moot, depriving district courts of subject matter jurisdiction.")

The *Iddir* matter, like the instant case, was brought by plaintiffs who had not been "granted any determination in their favor by either the INS or any court" that would have required adjustment of status before the end of the fiscal year, and therefore neither of the other two cases applied. *Iddir*, 166 F. Supp.2d at 1259. The court held that Iddir's action was moot, recognizing that immigrant visa numbers could no longer be assigned and any order compelling adjudication of the applications would have been a futile act. *Id*. at 1260.

This issue was addressed also by the 11th Circuit Court of Appeals in, *Nyaga v. Ashcroft*, 323 F.3d 906 (11th Cir. 2003). In that case, the applicant sought mandamus relief in the form of an order compelling the Attorney General and the INS to complete immediately all remaining process necessary to adjudicate his diversity visa application after the end of the fiscal year. The

---

[4] In *Iddir*, the court distinguished two previous decisions in the same district in which orders for adjustment of status were entered despite the expiration of the fiscal year. It pointed out that *Paunescu v. INS*, 76 F. Supp.2d 896 (N.D. Ill. 1999), involved a plaintiff who had been told at his interview that his application for adjustment of status under INA §245(i) would be approved. Further, the *Paunescu* court had issued a preliminary injunction ordering INS to adjudicate the adjustments for the lottery selectee and his spouse before the end of the fiscal year, but INS failed to do so. *Iddir*, 166 F. Supp.2d at 1259. In *Marcetic v. INS*, 1998 WL 173129 (N.D. Ill. April 6, 1998) the plaintiff had already been granted lawful permanent resident status by INS, but it failed to issue his green card by the end of the fiscal year. The trial court ordered INS to complete processing the adjustment of status, including issuance of the resident alien card.

10

Court held "[w]e agree with the Defendants that the phrase "shall remain eligible to receive such visa" plainly means that aliens, like Nyaga, who have been randomly selected to qualify for a visa under the diversity visa program cannot be issued a visa after midnight of the final day of the fiscal year for which they were selected. As of midnight on September 30, 1998, Nyaga was no longer eligible to receive an immigrant visa. The INS's failure to process Nyaga's application did not extend Nyaga's statutorily-limited period of eligibility for a diversity visa. "Eligible to receive such visa" is unambiguous, and because the phrase is unambiguous, our inquiry must end with the statute's plain language. In reaching this conclusion based on the statute's plain meaning, we are not alone. *Nyaga* 323 F.3d at 914-915. Therefore, even when there are exigent circumstances not attributable to the applicant but even to government error or actions of third parties, there is no remedy for an otherwise qualified diversity visa applicant who could not receive a visa number during the fiscal year to obtain a diversity visa after the fiscal year has ended. In administering the program, the State Department guarantees no entrant that he or she will obtain a visa.

Here, the period of eligibility for the diversity lottery visa program has lapsed, leaving Plaintiff with no remedy pursuant to the 2007 program. This, in essence, renders the Court without the ability to offer any meaningful relief, and the case moot. As a result, Plaintiff's Complaint should be dismissed with prejudice.

## IV.  <u>CONCLUSION</u>

For all the forgoing reasons the Complaint in this action should be dismissed with

prejudice.

Respectfully submitted,

/s/
_____

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

/s/
_____

RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/
_____

MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, D.C.  20530
202-305-4851

*Of Counsel:*
Gordon J. Dickey
Attorney - Advisor
Office of the Legal Adviser
United States Department of State
Washington, D.C.  20520

12

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of December 2007, I caused the foregoing *Motion to Dismiss* and all supporting documents to be served on plaintiff, postage prepaid, addressed as follows:

**HENRI KELI**
**31 Park Grange Mount**
**Norfolk Yorkshire**
**Sheffield  S2  3SP**
**United Kingdom**

_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 305-4851
(202) 514-8780 (facsimile)

13



**United States Department of State**

*Washington, D.C. 20520*

Congratulations!

You are among those randomly selected and registered for further consideration in the Diversity Immigrant Visa program for fiscal year 2007 (October 1, 2006 to September 30, 2007). Please read the instructions and follow them carefully to continue processing your application. In order to help insure that all available visas are used each year, more people are randomly selected than there are visas; thus visa issuance to you cannot be guaranteed, even if you meet all the qualifications, and it is important that you complete and return the forms listed below as quickly as possible. After you return all of the forms listed below and if there are appointments available, we will schedule you for an interview at the appropriate embassy/consulate. You will be contacted by the Department of State by mail if you are selected for an interview.

Important Basic DV-2007 Requirements

The law creating the Diversity Immigrant Visa Program states that to qualify for a diversity visa, you must have either a high school education, or its equivalent, or two years of work experience. A high school education means successful completion of a formal course of elementary and secondary education comparable to completion of a 12-year course in the United States. If you are qualifying with work experience, you must have two years of experience in the last five years in an occupation which, by U.S. Department of Labor definitions, requires at least two years of training or experience. The U.S. Department of Labor provides information on job duties, knowledge and skills, education and training, and other occupational characteristics at their website http://www.doleta.gov/programs/onet/ or http://stats.bls.gov/oco/oco2007.htm. You must have either a high school education or sufficient work experience to qualify for a DV visa.

If you are qualifying with work experience, you must have two years of experience in the last five years in an occupation defined by U.S. Department of Labor as qualifying for the DV Program. The Department of Labor (DOL) O*Net Online Database http://online.onetcenter.org/ groups job experience into five "job zones." While many occupations are listed on the DOL Website, only certain specified occupations qualify for the Diversity Visa Program. To qualify for a Diversity Visa on the basis of your work experience, you must, within the past five years, have two years of experience in an occupation that is designated as Job Zone 4 or 5, classified in a Specific Vocational Preparation (SVP) range of 7.0 or higher. For more information on the DOL O'NET, refer to <http://www.doleta.gov/programs/onet/> or <http://stats.bls.gov/oco/oco2007.htm>.

If you do not meet one of these requirements, you are not eligible to be issued a diversity visa. Only you, as the principal applicant, must meet this requirement. Your spouse and children do not have to meet this requirement. Do not continue with this application if you do not meet the education or work experience requirement.

If you are scheduled for a visa interview, at the time of the interview consular officers will evaluate medical exam results, financial evidence, and police certificates. So, you must bring the original and one copy of all the documents listed in the enclosed instructions and your original notification letter to your interview. You are required to provide the consular officer with the English language translation of



12/05    LETTER TO DIVERSITY VISA APPLICANTS - 2007



# United States Department of State

*Washington, D.C. 20520*

any non-English language documents. If you do not have all the required original documents your visa application will not be processed or completed. The decision about whether you meet all the requirements for a diversity visa will be made at the time of your visa interview.

If you have had additional children since entering the DV lottery, or your immediate family situation has changed, notify us and send a copy of the birth certificate or marriage certificate to the Kentucky Consular Center.

<u>Instructions</u>

Step 1

Arrange and complete the following forms that are included in this packet:

Form DSP-122 (Supplemental Registration for the Diversity Immigrant Visa Program) – Only the Principal Applicant needs to complete Form DSP-122.

Form DS-230 Part 1 (Application for Immigrant Visa and Alien Registration - Biographic Data Sheet) – Principal Applicant and <u>all</u> family members applying for a Diversity Visa must submit Form DS-230 Part I.

Form DS-230 Part II (Application for Immigrant Visa and Alien Registration - Sworn Statement) Do not sign this form at this time. Principal Applicant and <u>all</u> family members applying for a Diversity Visa must submit an unsigned Form DS-230 Part II.

Note: Family members refer only to your spouse and unmarried children who have not reached age 21 before you entered the lottery.

Step 2

Obtain one (1) passport size full face photograph for each family member and yourself. You should submit one full face photograph for each family member applying for a Diversity Immigrant Visa.

General Photo Requirements

- One full face photo, as described below, is required for each family member.
- The photograph must have been taken within the last six months.
- Using felt pen to avoid mutilation of the photographs, lightly print the name of the subject on the back of photos.
- These photographs must be submitted with the Application for Immigrant Visa and Alien Registration (DS-230) and Supplemental Registration for the Diversity Immigrant Visa Program (DSP-122).



# United States Department of State

*Washington, D.C. 20520*

- Digitally reproduced photographs must be reproduced without discernible pixels or dot patterns. Photocopied photographs are not accepted.

<u>Full Face Photo</u>

These requirements apply to the full face photo which must be submitted for each applicant.

Photo Size

The full face photo for each visa applicant submitted must measure:

- 2 by 2 inches (roughly 50 mm square) with the head centered in the frame.
- The head (measured from the top of the hair to the bottom of the chin) should measure between 1 inch to 1 3/8 inches (25 mm to 35 mm) with the eye level between 1 1/8 inch to 1 3/8 inches (28 mm and 35 mm) from the bottom of the photo.

Photo Appearance

- The photograph must be a full-face view in which the visa applicant is facing the camera directly.
- The applicant should not look down or to either side, and the face should cover about 50 percent of the photo area.
- Side or angled views are not accepted.
- The photograph must be in color, but must have only a white or off-white background. Photos with dark, busy, or patterned backgrounds will not be accepted.
- In general, the applicant's head, including both face and hair, should be shown from the crown of the head to the tip of the chin on top and bottom and from hairline side-to-side. It is preferable that ears be exposed.
- Head coverings and hats are only acceptable due to religious beliefs, and even then, may not cover any portion of the applicant's face.
- Sunglasses or other wear which detracts from the face are not acceptable unless required for medical reasons (an eye patch, for example).
- A photograph depicting a person wearing a traditional facemask or veil that does not permit adequate identification is not acceptable.
- Photos of military, airline, or other personnel wearing hats are not acceptable. Photographs of applicants wearing tribal, national costume, or other headgear not specifically religious in nature are not acceptable.

**United States Department of State**

*Washington, D.C. 20520*

Step 3

Using the return address label, send all the completed forms for yourself and family members accompanying you, and the photographs to:

Department Of State
Kentucky Consular Center (KCC)
3505 North Highway 25W
Williamsburg KY, 40769 USA

Step 4

Review enclosed "Visa Instructions for Diversity Immigrant Visa Applicants" and obtain the following documents. It is strongly recommended that you begin this process early. Make one copy of each. Do not send these to the Kentucky Consular Center. You will be required to bring these to your consular interview. You must also obtain English translations for all documents that are not in the English language.

Documents you need to obtain:

• Birth certificates
• Police certificates
• Passports
• Deportation papers
• Court and prison records
• Military records
• Marriage certificates
• Termination of prior marriages
• Translations
• Evidence of required education or work experience
• Evidence of support

Enclosures:

1. Letter to Diversity Visa Applicants - 2007
2. Visa Instructions for Diversity Immigrant Visa Applicants
3. DSP-122, Supplemental Registration for the Diversity Immigrant Visa Program
DS-230, Application for Immigrant Visa and Alien Registration, Part I and Part II

<u>Looking Ahead</u>



**United States Department of State**

*Washington, D.C. 20520*

Applying at an Embassy or Consulate

If KCC receives the completed forms listed above while visa numbers are still available, you will be sent an appointment date and time for your visa interview at a U.S. Embassy/Consulate and information on how and where you, your spouse and children (if they will immigrate with you) can obtain medical examinations. Do not give up your job, dispose of your property, or make any final travel arrangements before you receive your immigrant visa. If and when your immigrant visa is approved, you will have six months (from the issuance date) to travel to and enter the United States.

Each applicant must be prepared to pay on the appointment day all fees required in connection with applying for a diversity visa. Prior to your appointment, please review items #32 and #33 from the Fee Schedule at http://travel.state.gov/visa/vofees.html#perm to obtain the most current fee information. As of March 8, 2005 the Diversity Visa Fee is $375.

Only contact the KCC to report a change of address or change in your family's status, such as death, marriage, divorce, birth of a child, etc.

Once KCC notifies you of your appointment date for the immigrant visa interview along with information concerning medical examinations, the American Embassy or Consulate abroad will conduct all further processing. Do not contact the Embassy/Consulate where you will apply until your appointment date has been set.

One final note: This letter only concerns processing of the DV-2006 visa. If you are also registered under another immigrant visa category, you should continue to process the other case using the instructions sent to you separately under that visa category.

Applying for adjustment of status in the U.S.

If you are in the United States, you may be eligible to apply to the U.S. Citizenship and Immigration Services (USCIS), formerly INS, for adjustment of status. Please note that the laws regarding adjustment of status have recently changed. The option to adjust status may no longer be available to all applicants. To determine whether or not you may adjust status you must contact the USCIS. If the USCIS confirms your eligibility to adjust status you should take this packet of documents to your local USCIS office. USCIS will provide instructions on how to proceed. It will not be necessary for you to contact the KCC for any further information or instructions if you apply to adjust status in the United States, and the KCC will not contact you again.

If your spouse and/or children live outside the United States, they may be eligible to apply for immigrant visas under the Diversity Visa program at an U.S. Embassy or Consulate General. However, the



**United States Department of State**

*Washington, D.C. 20520*

Embassy/Consulate cannot process your family members' applications until notification is received from USCIS advising that you have adjusted status. The USCIS will not automatically notify the embassy or consulate that you have adjusted status and that your family members will apply abroad for their visas to join you. You must request the USCIS to notify the embassy or consulate where your family intends to apply. The embassy or consulate must also be notified of the address where your family members can be contacted to schedule an interview.

Please remember that your spouse and/or children must apply for and be issued immigrant visas before the Diversity Visa program ends on September 30, 2007. They will not be eligible to apply for or be issued visas under this program after that date. It is therefore important that the embassy or consulate receives notification from USCIS in time to process the visas before the end of DV-2007 and/or before all DV numbers are used up. For additional information on adjusting your status in the United States, please refer to www.uscis.gov.

If USCIS determines that you are eligible to adjust status you will be required to pay a non-refundable diversity visa fee directly to the Department of State. This fee is assessed to cover the cost incurred by the Department in running the DV Program and is separate from any fees you will need to pay USCIS as part of your adjustment application. You must pay the diversity visa fee per person; that is a fee for yourself and for each member of your immediate family who plans to adjust status with you in the United States.

Family members living overseas will pay the diversity visa fee at the embassy/consulate where they will receive their visa. The fee for these family members must not be paid in the United States. Please consult the Fee Schedule at http://travel.state.gov/visa/vofees.html#perm for further information. As of March 8, 2005, the Diversity Fee is $375.

In order to complete payment of this fee, once the USCIS has accepted your case, fill out the receipt form at the bottom of this page, cut it off and mail it along with your cashier's check, or U.S. postal money order (made payable to the U.S. Department of State) for the correct amount depending on the number of people who will adjust status to the address below. Also, you must include a stamped, self-addressed envelope in which this receipt, stamped to confirm your payment, will be returned to you. You should present this receipt to USCIS at the time of your adjustment interview. Failure to do so may delay the processing of your case. Please include your case number on the check or postal money order.

Please mail the form below, a stamped, self-addressed envelope, and your check to the following address:

U.S. Department of State
Diversity Visa Program
P.O. Box 371989
Pittsburgh, PA 15262-0001

If you do not send the necessary items to the above address you case may be delayed. The above address and the form below are to be used for fee payment only. (Any correspondence or materials enclosed with this form will not be acknowledged or recorded.)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HENRI KELI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-1697 (RBW) |
| | )   ECF |
| CONDOLEEZZA RICE, | ) |
| Secretary of State, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>ORDER</u>

UPON CONSIDERATION of Defendants' Motion To Dismiss, the grounds stated

therefor, and the entire record herein, it is on this _____ day of _____, 2007, hereby

ORDERED that the said motion should be and hereby is granted; and it is

FURTHER ORDERED that Plaintiff's complaint be and hereby is dismissed with

prejudice.


_____
UNITED STATES DISTRICT JUDGE

Copies to

Mercedeh Momeni, via ECF

and

HENRI KELI
31 Park Grange Mount
Norfolk Yorkshire
Sheffield  S2  3SP
United Kingdom